UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

**James Brown,** an individual

      Plaintiff,

v.

**West Metro Appliance, LLC,** a limited liability corporation,
**Nicholas Erhart,** an individual,

      Defendants.

Case No.

**COMPLAINT
(WITH JURY DEMAND)**

---

## INTRODUCTION

1. James Brown worked more than 40 hours almost every week that he worked for West Metro Appliance LLC but received no overtime pay. When he learned that this was illegal and confronted Nicholas Erhart, the company's owner, about it, Erhart fired him. This civil action seeks redress for the violations of Brown's rights.

## JURISDICTION AND VENUE

2. This Court has federal question subject matter jurisdiction because Plaintiff's claims are based in part on federal law. Further, the parties are residents

of this State and District, and the unlawful practices alleged herein occurred in this State and District.

3. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims, as those claims arise from—and form part of—the same case and controversy as Plaintiff's federal claims.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391, as the parties are residents of this State and District and the events giving rise to the case occurred in this State and District.

## PARTIES

5. Plaintiff James Brown is an individual residing in Minnesota. At all times relevant herein, Brown was an "employee" as that term is used in the applicable statutes.

6. Defendant West Metro Appliance LLC is a limited liability corporation registered and headquartered in Minnesota. At all times relevant herein, it was an "employer" as that term is used in the applicable statutes.

7. Defendant Nicholas Erhart is an individual and the owner and manager of West Metro Appliance LLC. At all times relevant herein, he was an "employer" as that term is used in the applicable statutes.

## FACTUAL BACKGROUND

8. Plaintiff James Brown began working for West Metro Appliance LLC in February 2019 as an Office Logistical Manager.

9. West Metro Appliance's owner, Nicholas Erhart, hired Brown and controlled all aspects of his work, including his responsibilities, schedule, and wages.

10. From the beginning of his employment, West Metro Appliance paid Brown an hourly wage. He was always paid according to the number of hours he worked each week.

11. Brown acted under the direction and supervision of Erhart and had little discretion in the completion of his job responsibilities.

12. Brown worked more than 40 hours almost every week starting soon after West Metro Appliance hired him.

13. Brown accurately reported the number hours he worked to West Metro Appliance each week in the company's timekeeping system.

14. The following chart shows the number of hours Brown worked each week during his employment prior to July 2020 with West Metro Appliance, as reported in the company's timekeeping system:

| Week | Hours Worked | Overtime Hours |
|---|---|---|
| 2/27/19 | 28.02 | 0 |
| 3/4/19 | 48.27 | 8.27 |
| 3/11/19 | 12.83 | 0 |
| 3/18/19 | 22.02 | 0 |
| 3/25/19 | 49.08 | 9.08 |
| 4/1/19 | 50.46 | 10.46 |
| 4/8/19 | 46.11 | 6.11 |
| 4/15/19 | 51.93 | 11.93 |
| 4/22/19 | 49.35 | 9.35 |
| 4/29/19 | 50.07 | 10.07 |
| 5/6/19 | 50.73 | 10.73 |
| 5/13/19 | 50.37 | 10.37 |
| 5/20/19 | 49.33 | 9.33 |
| 5/27/19 | 50.75 | 10.75 |
| 6/3/19 | 41.75 | 1.75 |
| 6/10/19 | 54.85 | 14.85 |
| 6/17/19 | 65.00 | 25 |
| 6/24/19 | 63.13 | 23.13 |
| 7/1/19 | 53.55 | 13.55 |
| 7/8/15 | 49.80 | 9.8 |
| 7/15/19 | 63.59 | 23.59 |
| 7/22/19 | 52.27 | 12.27 |

| | | |
|---|---|---|
| 7/29/19 | 42.70 | 2.7 |
| 8/5/19 | 51.15 | 11.15 |
| 8/12/19 | 50.45 | 10.45 |
| 8/19/19 | 55.90 | 15.9 |
| 8/26/19 | 52.98 | 12.98 |
| 9/2/19 | 50.88 | 10.88 |
| 9/9/19 | 56.44 | 16.44 |
| 9/16/19 | 52.73 | 12.73 |
| 9/23/19 | 51.75 | 11.75 |
| 9/30/19 | 50.33 | 10.33 |
| 10/7/19 | 50.43 | 10.43 |
| 10/14/19 | 50.41 | 10.41 |
| 10/21/19 | 50.66 | 10.66 |
| 10/28/19 | 51.91 | 11.91 |
| 11/4/19 | 56.49 | 16.49 |
| 11/11/19 | 56.99 | 16.99 |
| 11/18/19 | 56.83 | 16.83 |
| 11/25/19 | 54.92 | 14.92 |
| 12/2/19 | 57.00 | 17 |
| 12/9/19 | 56.99 | 16.99 |
| 12/16/19 | 59.04 | 19.04 |
| 12/23/19 | 45.00 | 5 |
| 12/30/19 | 57.09 | 17.09 |

| | | |
|---|---|---|
| 1/6/20 | 59.24 | 19.24 |
| 1/13/20 | 61.23 | 21.23 |
| 1/20/20 | 60.31 | 20.31 |
| 1/27/20 | 55.99 | 15.99 |
| 2/3/20 | 52.45 | 12.45 |
| 2/10/20 | 58.01 | 18.01 |
| 2/17/20 | 56.37 | 16.37 |
| 2/24/20 | 58.44 | 18.44 |
| 3/2/20 | 55.96 | 15.96 |
| 3/9/20 | 54.29 | 14.29 |
| 3/16/20 | 56.10 | 16.1 |
| 3/23/20 | 55.86 | 15.86 |
| 3/30/20 | 55.73 | 15.73 |
| 4/6/20 | 55.50 | 15.5 |
| 4/13/20 | 56.35 | 16.35 |
| 4/20/20 | 55.35 | 15.35 |
| 4/27/20 | 57.87 | 17.87 |
| 5/4/20 | 55.95 | 15.95 |
| 5/11/20 | 56.72 | 16.72 |
| 5/18/20 | 46.45 | 6.45 |
| 5/25/20 | 55.25 | 15.25 |
| 6/1/20 | 55.45 | 15.45 |
| 6/8/20 | 54.11 | 14.11 |

| 6/15/20 | 55.70 | 15.7 |
| 6/22/20 | 46.45 | 6.45 |

15.	West Metro Appliance never paid Brown a higher wage for his overtime during this period.

16.	Instead, West Metro Appliance simply multiplied the number of hours Brown reported by his hourly wage and paid him that amount for the week.

17.	In or around June 2020, West Metro Appliance hired a third-party contract to manage certain functions related to its payroll system.

18.	The company it hired soon reported back to Erhart and Brown that under the law, West Metro Appliance should have been paying Brown at an overtime rate for the hours in excess of 40 hours that he had worked each week.

19.	West Metro Appliance and Erhart knew about this overtime pay requirement before the company told them, or at minimum were reckless in not knowing it.

20.	West Metro Appliance then began paying Brown 1.5 times his normal wage for all time he worked in excess of 40 hours each week.

21.	Erhart complained to Brown about having to make this change and pay him extra for his overtime hours.

22. When Erhart complained to Brown about this change, Brown reminded him that the company had saved thousands of dollars by not meeting its legal obligations over the previous 17 months.

23. Erhart was taken aback by Brown's assertion of his legal rights and did not respond.

24. A few weeks later on August 15, Erhart initiated another conversation with Brown about the overtime requirement. He complainted that the overtime pay made Brown "too expensive."

25. Brown took exception with the way Erhart talked about this issue and asked him to admit that he had been wrong to not pay overtime wages for all that time.

26. Erhart then fired Brown, explicitly citing Brown's assertion that Erhart had been wrong not to pay him overtime wages as a reason for the decision to terminate his employment.

27. Erhart's decision to terminate Brown was caused by Brown's protected conduct of raising concerns about West Metro Appliance's failure to pay overtime wages.

## COUNT 1:

## **FAILURE TO PAY OVERTIME WAGES**

## Fair Labor Standards Act – 29 U.S.C. § 207

28. Brown incorporates the allegations set forth in each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

29. The Fair Labor Standards Act (FLSA) requires employers to compensate employees at a rate of one-and-a-half times their regular rate of pay for each hour worked in excess of 40 during a work week.

30. Both West Metro Appliance LLC and Erhart were Brown's employer under the FLSA.

31. Brown worked in excess of 40 hours during almost every work week during which he worked for West Metro Appliance and Erhart.

32. West Metro Appliance and Erhart failed to pay Brown one-and-a-half times his regular rate of pay for the hours he worked in excess of 40 during those work weeks, in violation of the FLSA.

33. This violation was willful.

34. As a result of the violation of the FLSA by West Metro Appliance and Erhart, Brown is entitled to all damages and equitable relief available in law and

equity, including but not limited to: compensatory damages, liquidated damages, and reimbursement for costs and fees.

## COUNT 2:

## RETALIATION

**Fair Labor Standards Act – 29 U.S.C. § 215(a)(3)**

35. Brown incorporates the allegations set forth in each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

36. The Fair Labor Standards Act (FLSA) prohibits employers from discharging employees who raise concerns about violations of the FLSA, including the failure to pay overtime wages.

37. Both West Metro Appliance LLC and Erhart were Brown's employer under the FLSA.

38. West Metro Appliance LLC and Erhart fired Brown when he raised concerns about the company's failure to pay his overtime wages.

39. As a result of the violation of the FLSA by West Metro Appliance and Erhart, Brown is entitled to all damages and equitable relief available in law and equity, including but not limited to: compensatory damages, liquidated damages, emotional distress damages, and reimbursement for costs and fees.

## COUNT 3:

## RETALIATION

**Minnesota Payment of Wages Act – Minn. Stat. § 181.03, subd. 6**

40. Brown incorporates the allegations set forth in each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

41. The Minnesota Payment of Wages Act prohibits retaliation "against an employee for asserting rights or remedies under" several provisions of the Minnesota Fair Labor Standards Act, including those related to overtime pay.

42. West Metro Appliance LLC and Erhart retaliated against Brown by terminating his employment for asserting his right to overtime wages.

43. As a result of the violation of the Minnesota Payment of Wages Act by West Metro Appliance and Erhart, Brown is entitled to all damages and equitable relief available in law and equity, including but not limited to: compensatory damages, liquidated damages, emotional distress damages, and reimbursement for costs and fees.

## COUNT 4:

## RETALIATION

**Minnesota Whistleblower Act – Minn. Stat. § 181.932**

44. Brown incorporates the allegations set forth in each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

45. The Minnesota Whistleblower Act prohibits employers from discharging an employee who, in good faith, reports a violation of the law.

46. West Metro Appliance discharged Brown because he made a good faith report to Erhart that the company had violated the law by failing to pay him overtime wages.

47. As a result of the violation of the Minnesota Whistleblower Act by West Metro Appliance, Brown is entitled to all damages and equitable relief available in law and equity, including but not limited to: compensatory damages, liquidated damages, emotional distress damages, punitive damages, and reimbursement for costs and fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that the Court:

Enter a judgment in favor of Plaintiff and against Defendants as follows:

1. An order granting Plaintiff judgments against Defendants;

2. An order granting Plaintiff compensatory damages, as the jury determines;

3. An order granting Plaintiff punitive damages, as the jury determines;

4. An order granting Plaintiff liquidated damages;

5. An order granting Plaintiff injunctive and declaratory relief against Defendants, whereby the Defendants are temporarily and permanently enjoined and restrained from any further discrimination, reprisal or retaliation of Plaintiff or similarly situated persons;

6. An order for Defendants to pay Plaintiff's costs, interest, and attorneys' fees;

7. An order for Defendants to pay any and all further relief available, such as any relief this Court may consider equitable or appropriate.

*Plaintiff demands a jury trial.*

Dated: September 22, 2020                    **MADIA LAW LLC**


                                             /s/ Sam Kramer_____
                                             Samuel Kramer, MN #400743
                                             Joshua A. Newville, MN # 395221
                                             Madia Law LLC

13

323 Washington Avenue N., #200
Minneapolis, Minnesota  55401
Ph: 612.349.2743 | F: 612.235.3357
Email: sjkramer@madialaw.com

**Attorneys for Plaintiff James Brown**